UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MARINOSCI LAW GROUP, P.C.; and DAVID ROSENBERG, ESQ.,<br><br>Defendants. | Civ. No. 3:20-cv-591<br><br>**COMPLAINT** |

## INTRODUCTION

This is an action for declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C.A § 2201, *et seq*., to determine the parties' rights, obligations, and liabilities under certain insurance policies issued by Endurance American Specialty Insurance Company ("Endurance") to Marinosci Law Group, P.C. ("MLG"). In this complaint, Endurance seeks a declaration that the Policies do not obligate Endurance to defend or indemnify MLG or its former attorney, David Rosenberg, with respect to two actions alleging malpractice by Mr. Rosenberg in the 2015-16 period, while he was Managing Attorney of MLG's Southington, Connecticut office.

## PARTIES

1.  Endurance is an insurance company. It is incorporated in the State of Delaware, with its principal place of business in New York, New York.

2. MLG is a professional corporation. It is organized under the law of the State of Rhode Island, with its principal place of business in Warwick, Rhode Island. MLG provides legal services, including default services and real estate closings; and maintains offices in fourteen states, including Connecticut.

3. Mr. Rosenberg is an individual who resides in Southington, Connecticut. On information and belief, Mr. Rosenberg served as the Managing Attorney for MLG's Connecticut office between April 2015 and January 2018.

**JURISDICTION AND VENUE**

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332. This is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this judicial district.

**ALLEGATIONS**

6. MLG and Mr. Rosenberg are the subject of two lawsuits, brought by former clients, which are currently pending in Connecticut Superior Court: *Safe IRA Partners, LLC et al. v. Terk & Carlone, LLC et al.,* Dkt. NNH-CV18-6076645-S (Conn. Super. Ct., New Haven) (the "Safe IRA Action"); and *Halpert v. Rosenberg et al*. Dkt. HBB-CV-17-6036096-S (Conn. Super. Ct., New Britain) (the "Halpert Action").

7. MLG has demanded insurance coverage for the Halpert and Safe IRA actions under certain Lawyers' Professional Liability Policies issued to MLG by Endurance. These Policies include Endurance Policy No. LPL10003740604 (eff. September 1, 2016 - September 1, 2017) (the "2016 – 17 Policy"); Policy No. LPL10003740605 (eff. September 1, 2017 - September 1,

2018) (the "2017 – 18 Policy"); Policy No. LPL10003740606 (eff. September 1, 2018 - September 1, 2019) (the "2018 – 19 Policy"); and Policy No. LPL10003740606 (eff. September 1, 2019 - September 1, 2020) (the "2019 – 20 Policy").

8. Endurance has taken the position that it has no coverage obligations under the Policies, as to either MLG or Mr. Rosenberg, as to either of the two actions above. There exists an actual and justiciable controversy between Endurance, MLG and Mr. Rosenberg, as to which Endurance has no adequate remedy at law.

## The Halpert Action

9. The first of the two matters at issue is referred to herein as the "Halpert Action." On information and belief, Isaac and Marsha Halpert retained Mr. Rosenberg in December 2012 to represent them in a dispute with an individual named Malki Wiederman in Connecticut Superior Court (the "Wiederman Matter").

10. In April 2015, on information and belief, Mr. Rosenberg joined MLG, and became Managing Attorney of MLG's Connecticut Office. On information and belief, Mr. Rosenberg continued to represent the Halperts in the Wiederman Matter, while employed by MLG as its Managing Attorney.

11. In late 2015 or early 2016, on information and belief, Mr. Rosenberg became aware of a medical issue involving a close member of his family. Mr. Rosenberg alleges, and later informed MLG and others, that this issue affected his judgment, concentration, and ability to perform the professional duties of his position. MLG became aware of this issue, and the fact that Mr. Rosenberg believed it had impaired his professional performance.

12. After learning of this issue, MLG undertook steps to supervise and oversee Mr. Rosenberg's work. However, MLG did not report this medical issue to Endurance, and it did not

advise Endurance of this issue, even after it became aware that Mr. Rosenberg's performance was falling short of professional standards, and presented a heightened risk of professional malpractice to Mr. Rosenberg and the firm.

13. On January 14, 2016, Mr. Rosenberg failed to appear for a trial management conference in the Wiederman Action.

14. Two weeks later, on January 28, 2016, Mr. Rosenberg again failed to appear, this time for jury selection.

15. As a result of Mr. Rosenberg's failure to appear, a default judgment was entered against the Halperts. On February 5, 2016, the trial court entered judgment against the Halperts in the amount of $600,892.58. Endurance was not notified of the default, or Mr. Rosenberg's involvement therein.

16. In early- to mid-2016, MLG learned that Mr. Rosenberg had been removed as the Halperts' counsel, as a result of the default in the Wiederman Action. At that time, MLG management was instructed to take possession of Mr. Rosenberg's Wiederman files, and transfer those files to successor counsel, which they did. Endurance was not notified.

17. On October 20, 2016, the Halperts filed a complaint against Mr. Rosenberg with the Connecticut Grievance Committee. Thereafter, Mr. Rosenberg entered a plea arrangement with the Grievance Committee in which he admitted there was sufficient evidence for the state to find that he violated the rules of professional conduct. Mr. Rosenberg was officially disciplined on September 15, 2017. Endurance was not notified of the disciplinary complaint against Mr. Rosenberg, or the discipline imposed by the Grievance Committee.

18. On January 11, 2017, the Halperts filed their malpractice suit, naming Mr. Rosenberg and MLG as parties. Two weeks later, Mr. Rosenberg entered an appearance in this

action, as a self-represented defendant.  Mr. Rosenberg did not notify Endurance of this malpractice suit, or request a defense, and did not consult with Endurance before entering his appearance as a self-represented defendant.

19.     On February 15, 2017, MLG appointed Lynch Traub Keefe & Errante P.C. ("LTKE") as counsel in the malpractice action.  MLG did not notify Endurance of this malpractice suit, or request that Endurance provide it with a defense in that action.  Nor did MLG request a defense for Mr. Rosenberg, its former Managing Attorney.  Nor did it confer or consult with Endurance as to the LTKE representation.

20.     For almost three years, Mr. Rosenberg continued to represent himself, and LTKE continued to represent MLG in the Halpert Action.  During this time, substantial activity occurred. Among other things, MLG obtained Mr. Rosenberg's files; reviewed those files; participated in Mr. Rosenberg's deposition; and monitored the Halperts' various attempts to have the default overturned, including an unsuccessful appeal to the Connecticut Supreme Court.  At no time during this period did MLG report the Halpert Action to Endurance.  It was not until January 8, 2020, that MLG notified Endurance of the Halpert Action, and requested that Endurance provide coverage.

### **Declination of Coverage - Halpert**

21.     After receiving MLG's tender of the Halpert Action, Endurance evaluated coverage under the 2019-20 Policy, which was in effect when notice was provided; and under the 2016-17 Policy, in effect when the Halpert Action was filed.

22.     Each of the two potentially implicated Policies provided coverage on a "claims made and reported" basis.  In other words, each Policy provided coverage only for claims that were [1] asserted against MLG in that particular Policy period, and also [2] reported to Endurance during the same Policy period.

23. Specifically, the Insuring Agreement of each Policy states:

> The Company shall pay Damages and Claims Expenses resulting from any Claim first made against the Insured during the Policy Period and reported to the Company in writing during the Policy Period or any applicable Extended Reporting Period, provided that each Wrongful Act or Interrelated Wrongful Act was committed on or after the Retroactive Date and before the Policy terminates.

24. After carefully evaluating MLG's tender, Endurance advised MLG that there is no coverage for the Halpert Action under either Policy. Since the Halperts' claim was first made against MLG in 2016-2017 – which pre-dated, and lay outside, the period of the 2019-20 Policy – the 2019-20 Policy did not afford coverage for the claim.

25. Moreover, the Halpert Action was not "reported to [Endurance] in writing" until January 2020. Since the Claim was not "reported to [Endurance] in writing" during the period of the 2016-17 Policy, the 2016-17 Policy did not afford coverage for the claim, either.

26. Finally, by correspondence dated February 11, 2020, Endurance also noted MLG's failure to disclose the Halpert action, or the issues related to Mr. Rosenberg's professional performance, on MLG's applications for coverage during the relevant period. And it noted various other provisions of the Policies that appeared to preclude coverage to MLG, in whole or in part, with respect to the Halpert Action.

27. MLG has rejected the positions taken by Endurance. It maintains that it is entitled to coverage, under one or both Policies, for the allegations made in the Halpert Action.

**The Policy Applications**

28. On July 24, 2017 – more than six months after the Halpert malpractice action was filed against MLG and Mr. Rosenberg, and while that malpractice action was pending – MLG

submitted a Renewal Application for Lawyers' Professional Liability Insurance (the "Application") signed by Gary D. Marinosci.

    29.    On the Application, MLG was asked:

> 19.    Have any claims, suits or proceedings (including without limitation: any shareholder action or derivative suit; or any civil, criminal, or regulatory action, or any complaint, investigation or proceeding related thereto) been made **during the past 12 months** against: (a) the Applicant; (b) its predecessors in business; (c) any Attorney in the Firm; or (d) any Attorney in the Firm's predecessors in business **which have not been previously reported to the Insurer?**

MLG answered "no" to this question.

    30.    On the Application, MLG was asked

> 20.    Is the Applicant (after diligent inquiry of each principal, partner, managing member, director or officer) aware of any claims, suits or proceedings (including without limitation: any shareholder action or derivative suit; or any civil, criminal, or regulatory action, or any complaint, investigation or proceeding related thereto) which may result in a claim being made against: (a) the Applicant; (b) its predecessors in business; or (c) any Attorney in the Firm; or (d) any Attorney in the Firm's predecessors in business **which have not been previously reported to the Insurer? ?**

MLG answered "no" to this question.

    31.    On the Application, MLG was asked:

> 21.    Has any Attorney in the Firm been **over the past 12 months** subject to any disciplinary inquiry, complaint or proceeding for any reason other than non-payment of dues or been refused admission to practice, disbarred, suspended, formally reprimanded or sanctioned in any other manner?

MLG answered "no" to this question.

    32.    On the Application, MLG was asked

> 22.    Has the Applicant or any Attorney in the Firm been involved **during the past 12 months** in any disputes with respect to fees or other compensation which may be due for professional services rendered by the Applicant?

MLG answered "no" to this question.

    33.    On the Application, MLG was asked

24539427v.1

> 23. Is the Applicant or any Attorney in the Firm aware of any actual or alleged deficiencies, errors or omissions in work performed by the Applicant or by others for whom the Applicant is legally responsible **which have not been previously reported to the Insurer?**

MLG answered "no" to this question.

34. At no point on the Application did MLG disclose the professional issues of which it was aware, involving Mr. Rosenberg. At no point did MLG disclose the medical issues that reportedly affected Mr. Rosenberg's professional performance in 2015-16. At no point did MLG disclose the complaint that had been filed against Mr. Rosenberg with the Connecticut Grievance Committee, or the plea arrangement Mr. Rosenberg had entered, or the discipline the Grievance Committee had imposed.

35. At no point did MLG disclose the malpractice suit that the Halperts had filed, naming Mr. Rosenberg and MLG. At no point did MLG disclose the various adverse rulings that had entered, as to Mr. Rosenberg's conduct, and the Firm's potential liability for Mr. Rosenberg's conduct.

36. The responses that MLG recorded on the Application, as to these matters, were inaccurate. On information and belief, MLG and Mr. Marinosci knew that they were inaccurate. Alternatively, on information and belief, the inaccurate information that Mr. Marinosci recorded on the 2017-18 Policy Application was the result of MLG's failure to make a diligent inquiry of each principal, partner, managing member, director, officer and employee of the Firm – including Mr. Rosenberg – before Mr. Marinosci completed and signed the Application.

37. Above Mr. Marinosci's signature, the Application says:

> The undersigned, as authorized agent of all individuals and entities proposed for this insurance, declares that, to the best of his/her knowledge and belief, after diligent inquiry of each principal, partner, managing member, director, officer and employee of the Firm, the statements in this

> Application are true and complete and will be relied upon by the Insurer in issuing any policy.
>
> The undersigned agrees that if the information provided in this Application changes between the time this Application is executed and the time the proposed insurance policy is bound or coverage is commenced, the Applicant will immediately notify the Insurer in writing of such changes, and that the Insurer may withdraw or modify any outstanding quotations or agreements to bind the insurance.

38. The Application also says:

> It is agreed that any claim or lawsuit against the Applicant, or any principal, partner, managing member, director, officer, or employee of the Applicant, or any other proposed insured, arising from any fact, circumstance, act, error or omission disclosed or required to be disclosed in response to Questions 19, 20, 21, 22 and/or 23, is hereby expressly excluded from coverage under the proposed insurance policy.

39. Endurance issued the 2017-18 Policy in reliance on these representations and provisions, and the information MLG provided on the Application. Underscoring this reliance, the Policy contained a Representations and Severability Provision, which said:

> In issuing this Policy, the Company has relied upon the statements, representations and information contained in the Application. Every Insured acknowledges and agrees that all such statements, representations, and information (i) are true and accurate; (ii) were made or provided in order to induce the Company to issue this Policy; and (iii) are material to the Company's acceptance of the risk to which this Policy applies. If any of the statements, representations or information in the Application are not true and accurate, there shall be no coverage for any Claim made pursuant to this Policy with respect to any Insured who knew, as of the effective date of the Policy Period, of any statements, representations or information that were not truthfully or accurately disclosed in the Application. The knowledge of any Insured shall not be imputed to any other Insured person for the purposes of determining coverage. However, for the purposes of the preceding sentence: [1] the knowledge of any Insured who is acting or has acted as in-house counsel, general counsel, risk manager or managing partner on behalf of the Named Insured shall be imputed to the Insured; or [2] the knowledge of the person(s) who signed the Application for this Policy shall be imputed to the Insured.

Mr. Rosenberg, as Managing Attorney of MLG's Connecticut office, falls within the ambit of Subparagraph [1], above.

40. One year later, on July 23, 2018, MLG submitted a similar application for coverage under the 2018-19 Policy. That Application contained the same misrepresentations and omissions, and again failed to disclose the Halpert Action, or the professional issues as to Mr. Rosenberg, of which MLG was then aware.

## The Safe IRA Action

41. In addition to the Halpert Action, above, MLG, Mr. Rosenberg and Endurance are also facing a second potential loss – the "Safe IRA Action" – which related to and arose from Mr. Rosenberg's professional conduct in the 2015-16 period, and from the facts, circumstances, acts, errors and omissions MLG failed to disclose on the 2017 and 2018 Policy Applications.

42. On May 2, 2015, while serving as MLG Managing Attorney, Mr. Rosenberg began representing Safe IRA in a $1.6M loan transaction with Fondue Fusion, LLC. At this time, Fondue Fusion was a start-up company looking to establish a restaurant in the Mohegan Sun Casino.

43. Because Safe IRA required collateral for the $1.6M loan, a relative of one of Fondue Fusion's owners agreed to put up a landfill property he owned in New London, Connecticut (the "Landfill Property").

44. In November 2015, on information and belief, Mr. Rosenberg reviewed the results of a title search report for the Landfill Property. Mr. Rosenberg became aware that the Property was subject to a Stipulated Judgment, which would prevent the continued use of the Landfill Property for disposal activities in the event of the Property's sale or transfer.

45. On information and belief, Mr. Rosenberg – after reviewing the Stipulated Judgment – drafted an opinion letter and environmental certification, which he sent to Fondue

Fusion's counsel for ratification, execution and issuance. The opinion letter and environmental certification stated, inaccurately, that there were no judgments or court orders against the property, that the property was in compliance with environmental protection laws, and that all necessary permits had been secured.

46. Around the same time, on information and belief, Mr. Rosenberg also engaged in communications with the Connecticut Department of Energy and Environmental Protection ("DEEP"). On December 22, 2015, the day before the loan transaction closed, Mr. Rosenberg received an e-mail from a DEEP employee, who said "[t]he transfer of the [Landfill Property] permit would not allow any disposal activities to occur at the landfill."

47. On information and belief, Mr. Rosenberg did not forward this e-mail to Safe IRA or otherwise make Safe IRA aware of the e-mail.

48. On information and belief, these activities took place at the time that Mr. Rosenberg's professional performance was being affected by the family medical issue, above. As noted, MLG did not report this medical issue to Endurance, and it did not advise Endurance of that issue, or of Mr. Rosenberg's deficient legal work with respect to the Safe IRA closing, even after it became aware that Mr. Rosenberg's performance during this period had fallen short of appropriate professional standards.

49. On information and belief, the Fondue Fusion closing went forward on December 23, 2015. Four months later, in April 2016, Fondue Fusion defaulted on the loan.

50. In September 2016, Safe IRA – represented by Mr. Rosenberg - initiated a foreclosure action regarding the property.

51. In the course of the foreclosure, on information and belief, Safe IRA discovered the property was encumbered and could not be used as a landfill if transferred. Safe IRA says this

encumbrance significantly diminished the property's value.  Endurance was not notified of Safe IRA's concerns.

52. In October 2016, MLG issued the first of several invoices to Safe IRA, reflecting Mr. Rosenberg's work in the foreclosure action.  On information and belief, none of these invoices was ever paid.  The invoices were not paid because of Safe IRA's concern and displeasure as to Mr. Rosenberg's professional services.  Endurance was not notified of the unpaid invoices, or of Safe IRA's dissatisfaction with Mr. Rosenberg, or of the professional issues that led to that dissatisfaction.

53. In November 2017, Safe IRA discharged Mr. Rosenberg as counsel.  One month later, in December 2017, it filed suit against Fondue Fusion's counsel ("TCL") in New Haven, Connecticut Superior Court.   In May 2018, TCL filed an Apportionment Complaint, and on May 18, 2018, Safe IRA filed a Motion to Cite In Defendants, directed to MLG and Mr. Rosenberg.  Endurance was not timely notified of any of these developments.

54. On June 29, 2018, Safe IRA served a complaint against MLG and Mr. Rosenberg, for legal malpractice.  Again, without notifying Endurance, MLG appointed LTKE to defend it – but not Mr. Rosenberg – in the Safe IRA action.

55. On August 31, 2018, as the 2017-18 Policy was about to expire, MLG provided Endurance – for the first time – with notice of the Safe IRA Matter.  At this time, a default judgment was in place against Mr. Rosenberg.  Endurance appointed counsel, under reservation of rights, and that counsel was successful in having the default lifted.

**The Safe IRA Declination**

56.     As part of its initial reservation of rights in the Safe IRA Action, Endurance requested that MLG provide it with certain information, going to MLG's knowledge of Mr. Rosenberg's allegedly deficient professional performance in the Safe IRA (and other) matters. Over a period of many months, Endurance continued to press for this information. As time went on, Endurance noted its growing concern that MLG might not have disclosed important facts regarding Mr. Rosenberg, or the Safe IRA Matter, on the Application.

57.     Finally, in January 2020, MLG tendered the Halpert Action to Endurance. At this time, Endurance became aware that MLG had not disclosed on its 2017-18 Policy Application nor on its 2018-2019 Policy Application--the pending malpractice action involving Mr. Rosenberg – or Mr. Rosenberg's professional issues during the 2015-16 period – or the underlying family concerns to which Mr. Rosenberg attributed to those issues.

58.     On April 30, 2020, Endurance wrote to MLG and Mr. Rosenberg, disclaiming coverage for the Safe IRA matter. The Safe IRA coverage declination was based, in part, on the misrepresentations and omissions on MLG's 2017 Application, and MLG's apparent failure to make a diligent inquiry before completing that document.

59.     Endurance also noted various other provisions of the Policies that appeared to preclude coverage to MLG, in whole or in part, with respect to the Safe IRA Claim.

60.     MLG has objected to the coverage positions taken by Endurance. It maintains that it is entitled to coverage, under the 2017 -18 Policy, for the allegations made in the Safe IRA Action.

24539427v.1

## COUNT I

### Declaratory Judgment

61. Endurance re-alleges and incorporates by reference paragraphs 1 through 61, above, as if fully set forth herein.

62. For the reasons set forth above, and the other reasons set out in the parties' prior correspondence, the Court should find that there is no coverage for MLG and Mr. Rosenberg under any of the Endurance Policies with respect to the Halpert Action.

63. Endurance is entitled to a declaration that the terms of the Policies do not obligate it to cover MLG and Mr. Rosenberg as to these claims. There exists an actual and justiciable controversy between Endurance and MLG and Mr. Rosenberg as to these matters, as to which Endurance has no adequate remedy at law.

## COUNT II

### Declaratory Judgment

64. Endurance re-alleges and incorporates by reference paragraphs 1 through 64, above, as if fully set forth herein.

65. For the reasons set forth above, and the other reasons set out in the parties' prior correspondence, the Court should find that there is no coverage for MLG and Mr. Rosenberg under any of the Endurance Policies with respect to the Safe IRA Action.

66. Endurance is entitled to a declaration that the terms of the Policies do not obligate it to cover MLG and Mr. Rosenberg as to these claims. There exists an actual and justiciable controversy between Endurance and MLG and Mr. Rosenberg as to these matters, as to which Endurance has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Endurance prays that the Court

1. Declare the rights and obligations of the parties under the Policies in accordance with Endurance's contentions herein;

2. Declare MLG and Mr. Rosenberg are not entitled to any benefits under the Policies above, in connection with the Halpert Action and Safe IRA Action claims;

3. Declare that MLG and Mr. Rosenberg must reimburse Endurance for all amounts expended in the defense of the Safe IRA Action; and

4. Order such other and further relief as is just and proper.

## **JURY DEMAND**

Jury trial is requested on all claims so triable.

Respectfully submitted,

Dated:  April 30, 2020

ENDURANCE AMERICAN SPECIALTY
INSURANCE COMPANY

By counsel,

/s/ Austin D. Moody
Austin D. Moody (ct30425)
WHITE AND WILLIAMS LLP
101 Arch Street, Suite 1930
Boston, MA  02110
Tel: (617) 748-5200
Fax: (617) 748-5201
moodya@whiteandwilliams.com